*1386
 
 OPINION
 

 Per Curiam:
 

 While working as a night Stocker at Smith’s Food King (“Smith’s”) on November 16, 1993, Jim Bullock attempted to pull down a case of sixty-four-ounce juice containers from a top shelf and felt a slight pain in his left arm and shoulder. Thinking that he had only pulled a muscle, Bullock did not seek immediate medical attention and was able to finish his shift. After completing his shift at the market, however, Bullock sought treatment from a chiropractor, Dr. Craig Reeves. Dr. Reeves noted pain and tenderness at the base of Bullock’s neck into his left shoulder. Dr. Reeves treated Bullock two more times, on November 17 and 18, 1993. Bullock’s condition did not improve with each visit, and he continued to experience moderate pain and tenderness in his neck and shoulder.
 

 The pain in Bullock’s arm and shoulder increased, and on November 24, 1993, Bullock sought medical care at the Desert Springs Hospital emergency room. Emergency room doctors told Bullock that he had suffered a bad muscle strain and referred him to Dr. Richard Briggs. Dr. Briggs placed Bullock in physical therapy and issued an off-work slip dated December 17, 1993.
 
 *1387
 
 Bullock applied for sick leave but was subsequently informed by a supervisor, Paul Swords, that sick leave would not be authorized because the injury was work-related. Bullock testified that Swords asked him if he wanted to fill out an accident report. Bullock responded that he could afford to take a couple of weeks off from work, and that he preferred to wait for a medical opinion indicating whether or not his injuries would prevent him from returning to work within this time frame.
 

 Dr. Briggs, after concluding that Bullock’s injuries were more serious than he originally thought, referred Bullock to an ortho-paedic surgeon, Dr. Francis D’Ambrosio. Bullock returned to Desert Springs Hospital on January 13, 1994, to complete a compensation claim form (“C-4 form”). Bullock gave the completed form to Swords, who relayed the information over the telephone to Pinnacle Risk Management (“Pinnacle”), Smith’s insurance administrator. Pinnacle referred the matter for investigation to an insurance adjustor. The investigator interviewed Bullock, Bullock’s co-worker, Frank Bastida, and Bullock’s supervisor, Matt Samp, and in a written report concluded:
 

 It appears the incident did happen as related by the employee, as it is substantiated by the co-worker. The co-worker did not actually see anything happen, but he has a clear recall of watching the employee work in pain and recalls asking the employee what happened. There apparently was no sudden trauma or violent reaction, merely a strain that caused increasing pain, with no restrictions nor impairment. As such, the employee did not deem it necessary to immediately file a formal report of an on the job injury.
 

 In a letter dated February 3, 1994, Pinnacle denied Bullock’s claim, finding no on-the-job injury and no indication of a timely reporting. Bullock appealed to the Department of Administration, and a hearing officer reversed the insurer’s denial. Smith’s and Pinnacle (“Respondents”) appealed the hearing officer’s decision, and the appeals officer ordered the decision reversed. The appeals officer found that Bullock failed to report his injury in a timely manner as required by former NRS 616.360(1)
 
 [1]
 
 ' that Bullock had not sustained a compensable industrial injury, and that Bullock failed to provide written notice of his injury within thirty days of the accident as required by former NRS 616.500(1).
 

 
 *1388
 
 Bullock filed a petition in district court requesting judicial review of the appeals officer’s decision. The district court denied Bullock’s petition. Bullock timely appeals.
 

 This court’s role in reviewing an administrative decision is identical to that of the district court. Titanium Metals Corp. v. Clark County, 99 Nev. 397, 399, 663 P.2d 355, 357 (1983). A reviewing court shall not substitute its judgment for that of the agency in regard to questions of fact. NRS 233B. 135(3). The standard of review is whether the agency’s decision was clearly erroneous or an arbitrary abuse of discretion. NRS 233B.135(3)(e) and (f); Collett Electric v. Dubovik, 112 Nev. 193, 196, 911 P.2d 1192, 1195 (1996). The decision of the agency will be affirmed if substantial evidence exists to support it. SIIS v. Swinney, 103 Nev. 17, 20, 731 P.2d 359, 361 (1987). Questions of law are reviewed
 
 de novo. Collett,
 
 112 Nev. at 196, 911 P.2d at 1195. However, an “agency’s conclusions of law which are closely related to the agency’s view of the facts are entitled to deference and should not be disturbed if they are supported by substantial evidence.” SIIS v. Khweiss, 108 Nev. 123, 126, 825 P.2d 218, 219 (1992).
 

 Whether Bullock’s failure to report his injury bars his claim
 

 Bullock’s claim was denied, in part, because he did not file a written notice of his injury pursuant to NRS 616.500(1).
 
 [2]
 
 Bullock does not dispute that he failed to file a written claim for an industrial injury in a timely manner. Bullock argues, however, that his failure to file a written claim should have been excused. [Headnote 4]
 

 Under NRS 616.5011, an insurer may excuse a claimant’s failure to file a notice of injury.
 
 [3]
 
 Actual notice or knowledge of an
 
 *1389
 
 injury by the employer may also excuse timely, formal notice.
 
 See
 
 Brocas v. Mirage Hotel & Casino, 109 Nev. 579, 584-85, 854 P.2d 862, 866-67 (1993); Industrial Commission v. Adair, 67 Nev. 259, 217 P.2d 348 (1950). This court recently addressed the issue of whether a claimant’s noncompliance with NRS 616.500 should be excused.
 
 See
 
 Bally’s Grand Hotel & Casino v. Reeves, 113 Nev. 926, 948 P.2d 1200 (1997). We held that the determination of whether an excuse exists that would permit the claimant to go forward with her or his complaint must be made by the insurance administrator.
 
 Id.
 
 at 929-30, 948 P.2d at 1203. Therefore, we remand this case to the administrator for consideration of the issue of whether Bullock’s failure to comply with the notice requirements of NRS 616.500 should have been excused.
 
 [4]
 

 Whether Bullock sustained a compensable industrial injury
 

 To recover workers’ compensation benefits, Bullock must show that an injury by accident occurred.
 
 See
 
 NRS 616.370(1). In order for an incident to qualify as an accident, the claimant must show the following elements: (1) an unexpected or unforeseen event; (2) happening suddenly and violently; and (3) producing at the time, or within a reasonable time, objective symptoms of injury.
 
 Brocas,
 
 109 Nev. at 586, 854 P.2d at 867 (citing American Int’l Vacations v. MacBride, 99 Nev. 324, 326-27, 661 P.2d 1301, 1303 (1983)); NRS 616.020.
 

 The appeals officer found that Bullock failed to establish that he sustained a compensable industrial injury. The appeals offi
 
 *1390
 
 cer’s determination was based on the lack of evidence that Bullock’s injury produced objective symptoms and on the finding that Bullock’s documentation failed to establish an exact date of injury.
 

 After reviewing the evidence in this case, we conclude that substantial evidence does not exist to support the appeals officer’s conclusion that no objective symptoms of injury existed. Further, although Bullock’s testimony as to the exact date of his injury is inconsistent with the dates on various medical reports, we conclude that this inconsistency was improperly used to deny Bullock’s claim where the evidence documents that an injury did in fact occur around the date alleged by Bullock.
 

 The order of the district court is reversed, and the case is remanded to the district court with instructions to remand to the insurance administrator for reconsideration of the issue of whether Smith’s failure to file a timely notice of his injury may be excused.
 
 [5]
 

 [1]
 

 NRS 616.010-616.750 has been replaced in revision by NRS 616A.005-616D.020. All references will be to the statutes in effect at the time of the appeals officer’s decision.
 

 [2]
 

 NRS 616.500 provides:
 

 1. An employee . . . shall provide written notice of an injury that arose out of and in the course of employment to the employer of the employee as soon as practicable, but within 30 days after the accident.
 

 2. The notice required by subsection 1 must:
 

 (a) Be on a form prescribed by the administrator. . . .
 

 4. An employer shall maintain a sufficient supply of the forms required to file the notice required by subsection 1 for use by his employees. . . .
 

 [3]
 

 NRS 616.5011(2) provides:
 

 An insurer may excuse the failure to file a notice of injury or a claim for compensation pursuant to the provisions of this section if:
 

 (a) The injury to the employee or another cause beyond his control prevented him from providing the notice or claim;
 

 
 *1389
 
 (b) The failure was caused by the employee’s or dependent’s mistake or ignorance of fact or of law;
 

 (c) The failure was caused by the physical or mental inability of the employee or the dependent; or
 

 (d) The failure was caused by fraud, misrepresentation or deceit.
 

 [4]
 

 Bullock argues that his failure to give timely written notice should be excused on two grounds: (1) his employer failed to provide the necessary notification forms, which was an act beyond Bullock’s control that prevented him from providing notice,
 
 see
 
 NRS 616.5011(2)(a), and (2) his ignorance of the severity of his injury caused him to delay filing a formal written notice with his employer,
 
 see
 
 NRS 616.5011 (2) (b). There is also evidence that Bullock put his supervisor, Paul Swords, on notice of his injury when Bullock requested and was denied sick leave. Swords testified, “There was something on sick leave and all that has to go through Bruce Gelbert. I think Jim [Bullock] notified me of that, and I notified him that he has [to] go through Bruce Gelbert
 
 because it
 
 was
 
 an accident claim.”
 
 (Emphasis added). Thus, Bullock may have a claim of actual notice or knowledge. It does not appear from the record that the insurance administrator considered any of these excuses.
 

 [5]
 

 We have considered all other issues on appeal and conclude that they are without merit.